A95A0955. GROUTAS v. McCOY et al.
(464 SE2d 657)

RUFFIN, Judge.

We granted Andrew Groutas's petition for interlocutory appeal to determine whether violation of a county ordinance on property owned by Groutas could render him liable for negligence per se, or whether he contracted responsibility for compliance with the ordinance to the tenant. Because we find that Groutas delegated this responsibility to

the tenant, we reverse the trial court's partial denial of Groutas's motion for summary judgment.

Groutas owned commercial real estate which was bounded by a fence to which electrical outlets were attached. He leased part of the property to an individual who then subleased it to Marion Webb, a co-defendant. Webb sold recreational vehicles ("RVs") on the property. The RVs were plugged into the electrical outlets on the fence. Joe McCoy sued Groutas and Webb, alleging he received an electrical shock when he placed his hand on the fence while inspecting one of Webb's RVs. Mrs. McCoy sued for loss of consortium. The DeKalb County electrical inspector testified that the outlet attached to the fence was in violation of a DeKalb County ordinance because it did not have a ground wire.

Groutas moved for summary judgment, contending that he had fully parted with the property and relinquished control to the tenant and that Webb, the sublessee, had exclusive control of the property. The trial court granted the motion as to McCoy's negligence claim but denied it as to McCoy's claim for negligence per se based on the violation of the ordinance.

1. Summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to any essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (4) (405 SE2d 474) (1991). McCoy contends genuine issues of material fact remain regarding whether the property Groutas leased to Webb included the fence. But Groutas testified that he leased the fence, and the deposition testimony of the sublessee, Webb, is consistent with this. Webb testified that if any repairs to the fence were necessary that he, not Groutas, was responsible for the repair. In addition, paragraph 9 of the lease between Groutas and the tenant gives the tenant exclusive control of the premises and specifically provides that Groutas was only responsible for keeping in good repair specific items such as the roof, foundation and exterior walls. The fence and outlets are not specified in paragraph 9.

McCoy also argues that violation of the DeKalb County ordinance is negligence per se, and that there is a jury question as to whether paragraph 14 of the lease absolves Groutas of his obligation to comply with that ordinance. See, e.g., *Northwestern Mut. Life Ins. Co. v. McGivern*, 132 Ga. App. 297 (2) (208 SE2d 258) (1974) (violation of such ordinances is negligence per se). Paragraph 14 of the lease reads as follows: "Tenant agrees, at his own expense, to properly comply with all requirements of any legally constituted public authority [i.e., DeKalb County] *made necessary by reason of Tenant's occupancy of said premises.* Landlord agrees to properly comply with

such requirements if not made necessary by reason of Tenant's occupancy. . . ." (Emphasis supplied.)

Although we have not specifically addressed whether a landlord can contract away the duty of compliance with a county electrical code, we have held that he cannot avoid the duties imposed by a housing code in a residential setting. But the owner of property not used as a "dwelling place" — as was the case here — can contract to avoid the duties to repair and improve the property set forth in OCGA §§ 44-7-13 and 44-7-14. See *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653 (445 SE2d 771) (1994).

McCoy argues that because the wiring on the fence existed prior to Webb's occupancy, compliance with the ordinance was not "made necessary" by Webb and was therefore Groutas's non-delegable responsibility. We disagree. Compliance was necessary as a result of the use of the outlets for Webb's RV business. Because Webb used the outlets in his RV business, he was responsible for assuring compliance with the ordinance.

Thus, because the lease gave the tenant both exclusive control of the premises as well as responsibility for compliance with any county ordinance made necessary by his occupancy, the trial court erred in denying Groutas summary judgment on McCoy's negligence per se claim.

2. Mrs. McCoy's right to recover for loss of consortium is dependent upon Mr. McCoy's right to recover against Groutas. *Lovelace v. Figure Salon*, 179 Ga. App. 51, 53 (3) (345 SE2d 139) (1986). Given our holding in Division 1 that the trial court erred in denying Groutas summary judgment, we likewise hold that it erred in denying summary judgment as to Mrs. McCoy's claim.

3. In light of our holding above that Groutas has no liability in tort, his motion for summary judgment on the issue of punitive damages should likewise have been granted by the trial court. See *Families First v. Gooden*, 211 Ga. App. 272 (7) (439 SE2d 34) (1993).

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Andrews, Johnson and Smith, JJ., concur. McMurray, P. J., Pope, P. J., and Blackburn, J., dissent.*

Pope, Presiding Judge, dissenting.

Even if a landlord has fully given up possession and control of the premises, he is responsible for damages arising from defective construction or failure to keep the premises in repair under OCGA § 44-7-14. *Flagler Co. v. Savage*, 258 Ga. 335, 337 (2) (368 SE2d 504) (1988). This responsibility can be modified by contract, but only with respect to the parties to the contract; a lease provision relieving a landlord of the obligation to keep the premises in repair is not effective against third persons lawfully on the premises. See id. And

*Flagler*, like this case, involved a commercial rather than a residential lease.

Moreover, *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653 (445 SE2d 771) (1994) does not support the proposition that a landlord may effectively delegate his duty where the violation of a specific ordinance or regulation (rather than just the generalized duty to repair under OCGA § 44-7-14) is involved. We did state in *Gaffney* that a landlord in a commercial context may delegate to an independent contractor his generalized duty to repair under OCGA § 44-7-14. Thus, the landlord would not be vicariously liable for the independent contractor's negligence where the landlord inspected the property, discovered the dangerous condition, took precautionary measures, and hired an independent contractor to make the necessary repairs, but the independent contractor was negligent in making the repairs.[1] Id. at 654-655. The *holding* of *Gaffney*, however, was that a landlord could *not* delegate his duty to repair elevators, which are specifically regulated due to their inherent potential for danger. See id. at 655. Like elevators, electrical wiring is specifically regulated due to its inherent potential for danger, and the duties imposed under those specific laws and regulations cannot be delegated. See also *Fulton v. Anchor Savings Bank*, 215 Ga. App. 456, 462 (2) (b) (452 SE2d 208) (1994).

*Colquitt v. Rowland*, 265 Ga. 905 (463 SE2d 491) (1995), the Supreme Court's most recent pronouncement in this area, is distinguishable in two important ways. First, unlike this case, it was undisputed in *Colquitt* that the tenant actually created the hazardous condition. And second, the alleged negligence in *Colquitt* did not involve the breach of a duty imposed by a specific statute, ordinance, or regulation.

For these reasons, the outcome of this appeal should not depend on the language of the lease agreement. The language relied upon by the majority may provide the basis for a landlord to file a cross-claim for full indemnification against the tenant, who is also a defendant in this case, but it does not preclude the landlord's liability to plaintiffs. I would therefore affirm the trial court's denial of landlord's motion for summary judgment with respect to the negligence per se claims of both plaintiffs.

The issue of the appropriateness of punitive damages was not raised by defendant's motion for summary judgment below, and is therefore not properly before us. In any case, evidence that a landlord failed to exercise any effort to comply with safety regulations may

---

[1] *Gaffney* is distinguishable from this case, of course, as the landlord here did none of these things.

support an award of punitive damages. *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 178-179 (1) (438 SE2d 406) (1993).

I am authorized to state that Presiding Judge McMurray and Judge Blackburn join in this dissent.

DECIDED DECEMBER 1, 1995.

*Carter & Ansley, Thomas E. Magill, Burke B. Johnson*, for appellant.

*Doffermyre, Shields, Canfield & Knowles, Ralph I. Knowles, Jr., R. Hutton Brown III, Crim & Bassler, Nikolai Makarenko, Jr.*, for appellees.